IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| ALLIANCE MED, LLC, et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 2:15-CV-00171-RWS |
| BLUE CROSS AND BLUE : | |
| SHIELD OF GEORGIA, INC., et : | |
| al., : | |
| : | |
| Defendants. : | |
| : | |

## **ORDER**

This case comes before the Court on Plaintiffs' Motion to Remand [Doc. No. 14]. After reviewing the record, the Court enters the following Order.

### **Background**

This action arises out of a dispute between multiple medical service providers and insurance companies. Plaintiffs filed their Complaint [Doc. No. 1-1] in the Superior Court of White County, Georgia. Defendants removed the action to this Court, invoking federal question jurisdiction based on the Employee Retirement Income Security Act, 29 U.S.C. § Ch. 18. ("ERISA").

Plaintiff Medical Providers are not in contract with Defendant Insurance

Companies and are thus considered "out-of-network healthcare providers" [Amended Complaint, Doc. No. 20 ¶ 109]. Defendants have submitted evidence that at least one of the insurance contracts forming the basis of Plaintiffs' allegations is an ERISA governed plan and that payment for out-of-network services is subject to the terms of that plan [Mos Affidavit, Doc. No. 25-1]. Plaintiffs admit that "some" of the insurance agreements are ERISA plans [Reply Brief, Doc. No. 26, p. 6].

After removal, Plaintiffs filed an Amended Complaint [Doc. No. 20] asserting the following causes of action: Misrepresentation Regarding Individual Policies (Count I), Fraud Regarding Individual Policies (Count II), Breach of Contract Regarding Individual Policies (Count III), Unfair Trade Practice (Count IV), Misrepresentation Regarding Group Policies (Count V), Fraud Regarding Group Policies (Count VI), Unfair Trade Practice Regarding Group Policies (Count VII), Misrepresentation Regarding Other Group Plans (Count VIII), Fraud Regarding Other Group Plans (Count IX), Theft by Deception (Count X), and Conspiracy - RICO (Count XI).

**Discussion**

## I. Legal Standard

"A defendant may remove a case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally." Kemp v. Int'l Bus. Machs. Corp., 109 F.3d 708, 711 (11th Cir. 1997) (citing 28 U.S.C. § 1441). When determining subject matter jurisdiction, a court must construe the removal statute narrowly and resolve any uncertainties in favor of remand. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Further, the party seeking removal bears the burden of establishing federal jurisdiction. Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005).

## II. Analysis

### A.   Which Complaint Governs

First, this Court must decide which complaint governs this suit. Defendants assert that the First Complaint [Doc. No. 1-1] is the operative pleading [Response Brief, Doc. No. 25, n.1]. When a defendant removes a case to federal court based on federal question jurisdiction, "an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." See Rockwell Int'l

3

Corp. v. United States, 549 U.S. 457, 474 n.6 (2007) (citations omitted). Contra Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011) (holding that jurisdiction is determined by plaintiffs' original complaints entered at the time of removal).  However, "[w]hen the single federal-law claim in the action [is] eliminated at an early stage of the litigation, the District Court [has] a powerful reason to choose not to continue to exercise jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988).  This Court's discretion should be exercised in a way which serves the values of "economy, convenience, fairness, and comity." Id. at 351.  In deciding whether to remand a case, the court "can consider whether the plaintiff has engaged in any manipulative tactics" in securing a state forum. Id. at 357.

In their Amended Complaint [Doc. No. 20], Plaintiffs eliminated three claims which Defendants had submitted as a basis for federal question jurisdiction. However, given that Plaintiffs amended their complaint very early in the proceedings before any discovery had been conducted, this Court will consider the Amended Complaint to determine whether any federal law claims still remain, and if not, whether justice will be best served by remanding to allow the state court to resolve this dispute.

4

### B.  ERISA Preemption Provisions

ERISA provides a uniform regulatory regime over employee benefit plans and includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation remains "exclusively a federal concern." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting Alessi v. Raybestos-Manhatten, Inc., 451 U.S. 504 (1981)).  Section 502(a) creates a cause of action for beneficiaries to recover benefits or enforce rights under an ERISA plan.  29 U.S.C. § 1132.  Congress has explicitly stated that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title."  29 U.S.C. § 1144(a) (emphasis added).  When interpreting what "relate[s] to" an employee benefit plan, the Supreme Court has determined that the law only needs to have a connection with or reference to such a plan.  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983)).  Further, "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."  Id. (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987)).

5

The Supreme Court has articulated a test to determine when ERISA's preemption provisions create a question of federal law. Davila, 542 U.S. at 210. A claim is completely preempted when (1) the claim could have been "brought under ERISA § 502(a)(1)(B)," and (2) there is "no other independent legal duty that is implicated by a defendant's actions." Id. This test has consistently been applied by the Eleventh Circuit. See, e.g., Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1345 (11th Cir. 2009).

C.   First Prong of Davila

The first prong of the Davila test requires the Court to consider whether Plaintiffs have standing to sue under ERISA and whether Plaintiffs' claims fall within the scope of ERISA. Conn. State Dental, 591 F.3d at 1350 (citing Davila, 542 U.S. at 211-12, and others). The Court will consider each of these in turn.

   1.   Standing

There are generally two categories of individuals that may sue for benefits under an ERISA plan: plan beneficiaries and plan participants. Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1351 (11th Cir. 1998). Healthcare providers are generally not considered "beneficiaries" or "participants" under ERISA. Hobbs v. Blue Cross Blue Shield of Alabama, 276 F.3d 1236, 1241 (11th Cir.

6

2001). However, healthcare providers may invoke derivative standing to sue on behalf of patients by showing a written assignment of rights from a party with standing. Sanctuary Surgical Ctr., Inc. v. Aetna Inc., 546 F. App'x 846, 851 (11th Cir. 2013).

Here, Plaintiffs assert in their Amended Complaint that they each received a written assignment from their respective patients [Amended Complaint, Doc. No. 20 ¶ 58]. Plaintiffs attempt to undermine their own standing to sue under ERISA by relying on Defendants' Motion to Dismiss [Doc. No. 17], in which Defendants argued that Plaintiffs lacked standing [Reply Brief, Doc. No. 26, p. 3]. However, Plaintiffs do not contest that the written assignments pled in their Amended Complaint confer derivative standing, and Plaintiffs' failure to attach this evidence to their complaint should not allow them to argue against standing so that they may appear before the court of their choosing. Therefore, Plaintiffs have standing to bring its claims under ERISA.

    2.    *Scope*

When considering whether Plaintiffs' claims fall within the scope of ERISA, this Court must determine whether the claims could have initially been brought under ERISA § 502(a)(1)(B). Davila, 542 U.S. at 210. This section

7

provides "[a] civil action may be brought by . . . a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Defendants assert that Plaintiffs could have brought these claims, as assignees of their patients, to recover benefits due under the terms of the applicable ERISA plans [Response Brief, Doc. No. 25, p. 11].  In response, Plaintiffs state that they are neither seeking to recover benefits under the plan nor alleging a violation of any ERISA plan document [Motion to Remand, Doc. No. 14-1, p. 3].  Instead, Plaintiffs claim that they are seeking damages associated with Defendants' misconduct in representing and selling insurance policies [Id.]. Further, Plaintiffs allege that Defendants have instituted an arbitrary algorithm to make it difficult to calculate the amount to which Defendants and their patients are entitled [Amended Complaint, Doc. No. 20 ¶¶ 95-107].

The causes of action that remain in the Amended Complaint are for misrepresentation, fraud, unfair trade practices, theft by deception, and RICO conspiracy.  The gravamen of these fraud based claims is the difference between the rates paid to out-of-network providers and the representations made to the

employers that purchased policies from Defendants. This is directly related to the terms of the plans themselves. Even when alleged conduct arises before the development of the ERISA contract, "claims against an insurer for fraud and fraud in the inducement to purchase a policy are in essence claims 'to recover benefits due to [the beneficiary] under the terms of the plan.'" Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1213 (11th Cir. 1999) (quoting 29 U.S.C. § 1332(a)(1)(B)). The claims asserted here seek compensatory relief which will be determined by the plan. Although Plaintiffs rely on the distinction between "rate of payment" and "right of payment," this distinction is irrelevant in cases involving out-of-network providers because a "rate of payment" dispute is governed by the provider agreement. See Conn. State Dental, 591 F.3d at 1349. Plaintiffs in this case are not in-network providers and thus do not hold a provider agreement with Defendants. Therefore, these claims are within the scope of ERISA.

      D.    Second Prong of Davila

Next, the Court must determine whether the claims implicate a legal duty independent of those imposed by ERISA. Davila, 542 U.S. at 210. In Davila, the Supreme Court held that the claim did not implicate an independent legal duty

because the causes of action were not "entirely independent of the federally regulated contract itself." 542 U.S. at 213. The claims alleged by Plaintiffs here are based entirely on circumstances surrounding the creation and implementation of these contracts (some of which are governed by ERISA). Resolution of these claims will necessarily require examining the contract between Defendants and Plaintiffs' patients. Further, it would be difficult, if not impossible, to determine the amount of damages without considering the plan documents. Therefore, the claims asserted do not arise from an independent legal duty, and the second prong of the Davila test is satisfied.

E.   Supplemental Jurisdiction

Under 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction over state law claims related to any claims over which the court has original jurisdiction. All of the claims asserted by Plaintiffs arise out of the same general allegations. The Court will exercise its supplemental jurisdiction over the claims that are not preempted because all of the claims arise out of the same common nucleus of operative fact.

## Conclusion

For the aforementioned reasons, Plaintiffs' Motion to Remand [Doc. No.

10

14] is **DENIED**.[1]  The parties are directed to file their Joint Preliminary Report and Discovery Plan within fourteen days.

    **SO ORDERED**, this 10th day of June, 2016.

                                          */s/ Richard W. Story*
                                          **RICHARD W. STORY**
                                          United States District Judge

---

[1] The Court notes, had it considered the original complaint as the governing document, the conclusion would remain the same.